UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UPSTATE NEW YORK ENGINEERS HEALTH FUND,
by Deborah Spaulding, as Administrator; UPSTATE NEW
YORK ENGINEERS PENSION FUND, by Deborah
Spaulding, as Administrator; UPSTATE NEW YORK
ENGINEERS S.U.B. FUND, by Deborah Spaulding, as
Administrator; UPSTATE NEW YORK ENGINEERS
TRAINING FUND, by Theron Hogle and Eugene Hallock,
as Trustees; LOCAL 106 TRAINING AND
APPRENTICESHIP FUND, by Daniel J. McGraw and
Eugene Hallock, as Trustees; OPERATING ENGINEERS
LOCAL 17 TRAINING FUND, by James Smolinski, as
Administrative Manager; CENTRAL PENSION FUND OF
THE INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS, by
its Board of Trustees; INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL UNION NO. 17, by
Gary Swain, as Business Manager; UPSTATE NEW
YORK OPERATING ENGINEERS, LOCAL 158, by
Daniel McGraw, as Business Manager,

5:21-cv-00344 (BKS/ML)

            Plaintiffs,

v.

PUMPCRETE CORPORATION and GEORGE CULP,
Individually and as an Officer of Pumpcrete Corporation,

            Defendants.
_____

**Appearances:**

*For Plaintiffs*:
Jennifer A. Clark
Blitman & King LLP
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, NY 13204-1415

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

On March 25, 2021, Plaintiffs Upstate New York Engineers Health Fund; Upstate New York Engineers Pension Fund; Upstate New York Engineers S.U.B. Fund; Upstate New York Engineers Training Fund; Local 106 Training and Apprenticeship Fund; Operating Engineers Local 17 Training Fund; Central Pension Fund of the International Union of Operating Engineers and Participating Employers (collectively, the "Funds"); International Union of Operating Engineers, Local Union No. 17 ("Local 17"); and Upstate New York Operating Engineers, Local 158 ("Local 158"), by their administrators, trustees, and managers, filed this action against, among others, Defendant Pumpcrete Corporation. (Dkt. No. 1). Plaintiffs allege that Defendant violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, and the Labor–Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185(a), by failing to remit fringe benefit contributions and deductions. (*Id.*). Defendant has not answered the Complaint or otherwise appeared in this action.[1]

Presently before the Court is Plaintiffs' motion under Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 11). Plaintiffs seek: (1) entry of judgment against Defendant on the First and Second Causes of Action in the amount of $409,630.12 plus interest; (2) an order compelling an audit of Defendant from October 1, 2019 to date; and (3) permission to file a supplemental affidavit in support of their application to recover any debt uncovered by the audit, as well as interest, liquidated damages, audit fees, and attorneys' fees and costs incurred since May 27, 2021. (Dkt. No. 11, 2).

---

[1] The remaining Defendant has appeared in this action. The pending motion for default judgment pertains only to Defendant Pumpcrete Corporation.

2

## II.  DISCUSSION

### A.  Standard of Review

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment… is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action… and (3) it has properly served the pleading to which the opposing party has not responded"). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default… a proposed form of default judgment, and a copy of the pleading to which no response has been made").

On April 2, 2021, Plaintiffs served Defendant with a Summons and Complaint. (Dkt. No. 6-1, ¶ 4). On April 29, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendant's "failure to plead or otherwise defend" this action. (Dkt. No. 6). As required by Local Rule 55.1, Plaintiffs submitted an affidavit showing that: Defendant is a corporation and thus is not an infant, in the military, or incompetent; Defendant failed to file an answer or otherwise defend this action; and that Plaintiffs properly served the complaint. (Dkt. No. 6-1, ¶¶ 3–6). On April 30, 2021, Plaintiffs received a clerk's entry of default. (Dkt. No. 8). On June 2,

2021, Plaintiffs filed a motion for default judgment under Rules 54(b) and 55(b). (Dkt. No. 11). Although Plaintiffs served the motion on Defendant, (*see* Dkt. No. 12 (certificate of service)), Defendant filed no response. Therefore, Plaintiffs have met the procedural requirements and are entitled to an order of default under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

**B.     Liability**

By failing to appear in this action or oppose this motion, Defendant is deemed to have admitted the factual allegations in the Complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint" (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim"), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

**1.     First and Second Causes of Action**

**a.     ERISA § 515, 29 U.S.C. § 1145**

Under § 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the

extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

According to the First Cause of Action, Defendant is liable under ERISA for failing to remit fringe benefit contributions and deductions. (Dkt. No. 1, ¶¶ 36–38). Plaintiffs allege Defendant is an "employer[] in an industry affecting commerce, all as defined in ERISA [§§] 3(5)(11) and (12)," (*Id.* at ¶ 19), and that the Funds are both multiemployer funds and employee benefit plans as defined under ERISA §§ 3(37) and (3), respectively. (*Id.* at ¶ 16).

Additionally, Plaintiffs allege that, at all times relevant to this case, Defendant was bound to seven collective bargaining agreements: (1) the April 2009–March 2012 Agreement between International Union of Operating Engineers Local No. 463[2] AFL-CIO and the Building Industry Employers Association of Niagara County, New York, Inc., executed by Defendant on June 10, 2009; (2) the 2014–2017 Agreement between Pumpcrete Corp. Residential Contract/Shop and the International Union of Operating Engineers Locals 17, 17A, 17B, 17C, 17RA, and 17S, executed by Defendant on September 4, 2014; (3) the June 1, 2016–May 31, 2019 Agreement between Independent Building Contractors of WNY and the International Union of Operating Engineers Local 17, 17A, 17B, and 17RA, executed by Defendant on September 27, 2018; (4) the 2015–2018 Agreement between the Independent Heavy and Highway Contractors of WNY and the International Union of Operating Engineers Local No. 17, executed by Defendant on May 12, 2015; (5) the 2018–2021 Agreement between the Independent Heavy and Highway Contractors of WNY and the International Union of Operating Engineers Local No. 17, executed

---

[2] While the Local No. 463 Agreement was originally entered into by International Union of Operating Engineers, Local No. 463—who is not a party in this action—Plaintiffs allege "Local 17 is the successor in interest" to Local No. 463 "via a merger effective May 1, 2019." (Dkt. No. 1, ¶ 14).

by Defendant on September 27, 2018; (6) the 2015–2019 Agreement between Labor Relations Divisions of Albany Region Rochester Region Central New York Region Associated General Contractors of New York State, LLC and International Union of Operating Engineers Local Union No. 158, executed by Defendant on February 13, 2017; and (7) the June 1, 2015–February 28, 2019 Building Agreement between "The Associations" and Local No. 158 of the International Union of Operating Engineers, executed by Defendant on February 13, 2017 (collectively, the "CBAs"). (*Id.* at ¶ 25).

> Pursuant to the CBAs, Plaintiffs allege that Defendant is:
>
> bound by the terms and conditions, rules and regulations of the Agreement and Declaration of Trust of the Upstate New York Engineers Health Fund, the Agreement and Declaration of Trust of the Upstate New York Engineers Pension Fund, the Agreement and Declaration of Trust of the Upstate New York Engineers S.U.B. Fund, the Agreement and Declaration of Upstate New York Engineers Training Fund, the Agreement and Declaration of Trust of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, the Agreement and Declaration of Trust of the Local 17 Training Fund, the Agreement and Declaration of Trust of the Local 106 Training Fund, and the Upstate New York Engineers' Funds' Collections Policy

(collectively, the "Trusts" and "Collections Policy"). (*Id.* at ¶ 26). The CBAs, Trusts, and Collections Policy obligate Defendant "to submit monthly reports and contributions to the Funds for each hour worked by its employees who performed work covered by the CBA" by the "fifteenth (15th) day of the month following the month during which the hours were worked." (*Id.* at ¶¶ 27, 33). They also require Defendant to "pay contributions to the Funds" and "deduct stipulated sums from the wages of certain employees and pay said amounts to the Union." (*Id.* at ¶¶ 31–32).

According to the Complaint, Defendant failed to "properly report hours worked by its employees, and underreported and underpaid contributions . . . and deductions to the Plaintiffs

6

for those employees performing work covered by the CBA." (*Id.* at ¶ 35). Between January 1, 2017 and September 30, 2019, Plaintiffs allege that Defendant failed to remit $231,743.34[3] in fringe benefit contributions and deductions. (*Id.* at ¶¶ 36–37). Therefore, with respect to the First Cause of Action, Plaintiffs sufficiently allege that Defendant failed to comply with the terms of the CBAs and their attendant Trusts and Collections Policy, and thus, incurred liability for delinquent contributions and deductions under ERISA. *See United States v. Beam*, No. 12-cv-0087, 2012 WL 1802316, at *2, 2012 U.S. Dist. LEXIS 69054, at *4 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that [it] is bound by the terms of the [Agreement] [it] entered into with plaintiff").

### b. LMRA § 301, 29 U.S.C. § 185

"Section 301 of the LMRA provides a federal cause of action for suits for violation of contracts between an employer and a labor organization." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (internal quotation marks and alteration omitted); 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a CBA." *Mason Tenders Dist. Council Welfare Fund v. Shelbourne Constr. Corp.*, No. 19-cv-7562, 2020 WL 7028530, at *5, 2020 U.S. Dist. LEXIS 223588, at *13–14 (S.D.N.Y. Nov. 30, 2020) (quoting *Trustees of Sheet Metal Workers' Local Union No. 28 Funds & Plans v. Air Wise Heating & Cooling, Inc.*, No. 18-cv-11569, 2020 WL 2846693, at *2, 2020 U.S. Dist. LEXIS 96662, at *5 (S.D.N.Y. June 2, 2020), *report and recommendation adopted*, 2020 WL 3440503, 2020 U.S. Dist. LEXIS 109631 (S.D.N.Y. June 23, 2020).

---

[3] The amounts specified in the Complaint differ from the damages Plaintiffs seek in their motion for default judgment. (*See* Dkt. No. 11-10, at 12 (stating Defendant owes $231,743.28 and $231,743.56 in contributions and deductions)). The Court has awarded damages consistent with the documentary evidence.

7

Plaintiffs claim they are entitled to contractual damages under the LMRA. (Dkt. No. 1, ¶ 2; *see also* Dkt. No. 11-10, at 13 ("Defendant Organization is contractually obligated to reimburse the Plaintiffs for all attorneys' fees and costs incurred in connection with collection of the debt under Section 301(a) of the [LMRA]")). Plaintiffs allege that Local 17 and Local 158 are labor organizations within the meaning of the LMRA, (Dkt. No. 1, ¶¶ 14–15), and that Defendant is an employer bound to the CBAs and their attendant Trusts and Collections Policy, (*id.* at ¶¶ 19, 25), which require Defendant to remit contributions and deductions on behalf of employees who performed operating engineers' work. (*Id.* ¶¶ 27, 31–32). The allegation that, under the CBAs and Trusts and Collections Policy, Defendant was required to remit contributions and deductions and failed to do so, in violation of those agreements, (Dkt. No. 1, ¶¶ 27, 31–32, 36), is sufficient to establish Defendant's liability under the LMRA. *See Mason Tenders*, 2020 WL 7028530, at *5, 2020 U.S. Dist. LEXIS 223588, at *14 (concluding, on default judgment, that allegation that "[u]nder the terms of the Agreements, [the defendant] was required to make contributions to the union funds, and it failed to do so" sufficiently "establishes breach of the Agreements" and "liability under Section 301 of the LMRA").

  c.  **Audit Requirements**

Additionally, Plaintiffs allege that Defendant has not complied with its obligation to provide, or to permit Plaintiffs to audit, its books and records, papers and reports as may be necessary to permit the Plaintiffs to determine whether Defendant Corporation accurately reported the number of hours of bargaining unit work performed . . . and to determine the amount of contributions due and owing to Plaintiffs."[4] (Dkt. No. 1, ¶ 42). "Section 209 of ERISA

---

[4] Plaintiffs also ask the Court to order Defendant to produce its books and records from October 1, 2019 to date for Plaintiffs' review and audit. (Dkt. No. 1, ¶ 46–48). The Court will address Plaintiffs' request for an order compelling audit below.

8

requires an employer to 'maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.'" *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347 (E.D.N.Y. 2009) (quoting 29 U.S.C. § 1059(a)). "These records must be 'available for examination for a period of not less than six years.'" *Id.* (quoting 29 U.S.C. § 1027).

Plaintiffs allege that "Defendant Corporation is contractually obligated," under the CBAs, Trusts, and Collection Policy, "to timely report on a monthly basis the number of hours worked by all of its employees performing bargaining unit work" and remit contributions and deductions based on those reports. (*Id.* at ¶¶ 40–41). Defendant is also contractually obligated to "permit Plaintiffs, on demand, to check and audit its books and records . . . as may be necessary to permit whether Defendant Corporation accurately reported the number of hours of bargaining unit work performed by its employees and to determine the amount of contributions due and owing to Plaintiffs." (*Id.* at ¶ 42). However, Plaintiffs allege that because Defendant has not produced its books and records for audit since September 30, 2019, they "cannot determine whether Defendant Corporation has accurately reported the number of hours of bargaining unit work performed" after September 30, 2019. (*Id.* at ¶¶ 45–46). Based on these allegations, the Court concludes that Plaintiffs have established that Defendant was contractually required, but failed, to produce its books and records for audit and that Plaintiffs are entitled to relief in connection with Defendant's failure to produce its books and records. *See La Barbera*, 666 F. Supp. 2d at 348 (finding, on motion for default judgment, that "allegations that defendant has failed to comply with its contractual obligations and with the statutory requirements of ERISA are sufficient to state claims on which relief is warranted"); *see also Gesualdi*, 198 F. Supp. 3d at 218 (finding that a defendant's failure to remit contributions and "submit books and records to an

9

audit" in accordance with the parties' contract was sufficient to establish liability under the LMRA).

### 2. Partial Judgment

Although Plaintiffs only seek judgment on two of the four causes of action against one of the two defendants, (*see* Dkt. No. 11-1, ¶ 2), Rule 54(b) provides, in pertinent part, that "[w]hen an action presents more than one claim for relief… or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). There is "no just reason for delay… where a plaintiff might be prejudiced by a delay in recovering a monetary award." *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (citing *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 11–12, (1980)).

In this case, Plaintiffs have shown that there is no just reason for delay since the corpus and income of Plaintiffs' Funds have been reduced, and "[a] delay in allowing Plaintiffs to enforce their claim against Defendant… may result in the debt being uncollectible." (Dkt. No. 11-10, at 10). Thus, having found that Plaintiffs are entitled to default judgment on their First and Second Causes of Action, no claims for relief remain against Defendant. Accordingly, because Plaintiffs have established that they are entitled to judgment in their favor on these claims, the Court grants Plaintiffs' motion for default judgment as to liability in its entirety. The Court will address Plaintiffs' requests for damages, as well as an order compelling an audit, below.

## III. DAMAGES

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of

damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). A hearing is not, however, necessary if the record contains detailed affidavits and documentary evidence that enables the Court to evaluate the proposed sum and determine an award of damages. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages"); Fed. R. Civ. P. 55(b)(2) ("The court *may* conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter" (emphasis added)).

Based on Defendant's violations of ERISA and the LMRA, Plaintiffs seek to recover: $231,743.56 in fringe benefit contributions and deductions, $73,574.86 in interest, $68,880.00 in liquidated damages, $20,694.50 in attorneys' and paralegal fees, $817.20 in costs and disbursements, and $13,200.00 in audit fees. (Dkt. No. 11-1, ¶¶ 10, 14, 17, 19).

ERISA's civil enforcement provision provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

    (A)    the unpaid contributions,

    (B)    interest on the unpaid contributions,

    (C)    an amount equal to the greater of—

11

>> (i) interest on the unpaid contributions, or
>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). While interest and liquidated damages on untimely payments made prior to filing suit are not recoverable under ERISA, *Finkel v. Allstate Elec. Corp.*, No. 09-cv-4071, 2010 WL 5558899, at *5, 2010 U.S. Dist. LEXIS 139084, at *14 (E.D.N.Y. Nov. 24, 2010) ("ERISA does not permit damages for contributions paid prior to filing suit, even when those contributions were untimely paid" (citations omitted)), *report & recommendations adopted*, 2011 WL 63600, 2011 U.S. Dist. LEXIS 1489 (E.D.N.Y. Jan. 6, 2011), they may be recoverable "pursuant to a theory of contract law under the LMRA," if the plans or funds at issue provide a contractual basis for such an award. *Finkel v. Robco Elec. Corp.*, No. 11-cv-2353, 2012 WL 3306963, at *6, 2012 U.S. Dist. LEXIS 113818, at *19 (E.D.N.Y. Mar. 30, 2012), *report and recommendation adopted*, 2012 WL 3307631, 2012 U.S. Dist. LEXIS 113837 (E.D.N.Y. Aug. 13, 2012) (citations omitted).

In support of their request for damages, Plaintiffs have submitted affidavits, based on personal knowledge, from: Michael Crabtree, chief executive officer of Central Pension Fund, (Dkt. No. 11-2); James Smolinski, administrative manager of Operating Engineers Local No. 17

Training Fund, (Dkt. No. 11-3); Deborah Spaulding, administrator of the Upstate New York Engineers Health Fund, Upstate New York Engineers Pension Fund, and Upstate New York Engineers S.U.B. Fund, (Dkt. No. 11-4); Daniel McGraw, business manager of Upstate New York Operating Engineers, Local 158, (Dkt. No. 11-5); Gary Swain, business manager of International Union of Operating Engineers, Local 17, (Dkt. No. 11-6); Timothy Dooley, an auditor retained by Plaintiffs, (Dkt. No. 11-8); Jennifer Clark, Plaintiffs' counsel, (Dkt. No. 11-1); and Linda DeMacy, legal assistant to Plaintiffs' counsel (Dkt. No. 11-9).[5] Attached to the affidavits are a number of exhibits, including: the relevant Agreements and Declarations of Trust (Dkt. No. 11-2, at 10–40; Dkt. No. 11-3, at 7–43; Dkt. No. 11-4, at 41–205; Dkt. No. 11-5, at 14–130); the relevant CBAs (Dkt. No. 11-5, at 132–225; Dkt. No. 11-6, at 40–240); the Collections Policy for the Funds (Dkt. No 11-4, at 207–15); audit reports from January 1, 2017 to September 30, 2019 (Dkt. No. 11-8, at 6–25); billing records for the audit (Dkt. No. 11-8, at 27–43); spreadsheets showing the contributions, deductions, interest, and liquidated damages due (Dkt. No. 11-9, at 12–56); and Plaintiffs' counsel's billing records and itemization of costs (Dkt. No. 11-1, at 54–69). The Court finds that it is not necessary, in this case, to hold an evidentiary hearing because damages are calculable under ERISA, 29 U.S.C. § 1132(g)(2), based upon the detailed affidavits and documentary evidence plaintiffs have provided. Accordingly, the Court awards damages as follows.

    A.    **Unpaid Contributions and Deductions and Interest**

Plaintiffs' documentary evidence shows that Defendant owes $231,743.56[6] in fringe benefit contributions and deductions. (Dkt. No. 11-1, ¶ 10). "Section 502(g)(2)(A) of ERISA

---

[5] Plaintiffs also submitted the Affirmation of Wesley Kless, former employee of Defendant and member of the International Union of Operating Engineers, Local 17 (Dkt. No. 11-7). However, the affirmation was not notarized.

[6] According to the affidavit of Timothy Dooley, the total amount of unpaid contributions and deductions owed by Defendant is $231,743.28—a difference of $0.28 (Dkt. No. 11-8, ¶ 11). However, after totaling the individual

entitles the Funds to recover monies owed on unpaid contributions." *Gesualdi*, 198 F. Supp. 3d at 219. Accordingly, Plaintiffs are entitled to an award of $231,743.56 in unpaid contributions and deductions.

Plaintiffs further seek $73,574.86 in interest on the unpaid contributions and deductions. (Dkt. No. 11-9, ¶ 10). Plaintiffs are "entitled to interest on the unpaid contributions at the rates provided by the Trusts and [Agreements] or, where the Trusts and [Agreements] do not provide a rate, at a rate prescribed by 26 U.S.C. § 6621." *Upstate New York Eng'rs Health Fund v. Ransom*, No. 13-cv-1434, 2015 WL 145441, at *4, 2015 U.S. Dist. LEXIS 2965, at *11 (N.D.N.Y. Jan.12, 2015) (citing 29 U.S.C. § 1132(g)(2)(B)). The interest is calculated in accordance with the parties contractually agreed upon rates and, where not specified, calculated at the rate prescribed by ERISA, 29 U.S.C.§ 1132(g)(2). (Dkt. No. 11-9, ¶¶ 4–5). Based on the documentary evidence, the Court awards $73,574.86 in interest on the unpaid contributions and deductions.

### B.    Liquidated Damages

Plaintiffs seek $68,880.00 in liquidated damages on unpaid contributions and deductions. (Dkt. No. 11-9, ¶ 10). ERISA provides for an award of additional interest or liquidated damages on unpaid contributions in "an amount equal to the greater of (i) interest on unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29 U.S.C. § 1132(g)(2)(C). In this case, the pertinent provisions of the Funds, Trusts, and Collections Policy contemplate an award of liquidated damages on unpaid contributions and deductions, (Dkt. No. 11-2, ¶ 7; Dkt. No. 11-3, ¶ 7; Dkt. No. 11-4, ¶ 10; Dkt. No. 11-5, ¶¶ 18–

---

contributions Dooley provides, it appears $231,743.56 is the correct number and is consistent with the documentary evidence. (*Id.*).

21; Dkt. No. 11-6, ¶ 15), and Plaintiffs have calculated liquidated damages accordingly. (Dkt. No. 11-2, ¶ 13; Dkt. No. 11-3, ¶ 11; Dkt. No. 11-4, ¶ 18; Dkt. No. 11-5, ¶¶ 25–27; Dkt. No. 11-6, ¶ 20). Based on the documentary evidence, the Court awards $68,856.94[7] in liquidated damages on unpaid contributions and deductions.

### C. Attorneys' Fees and Costs

Plaintiffs seek and are entitled to recover the attorneys' fees, costs, and audit fees they incurred in connection with their efforts to collect the delinquent contributions and deductions in this case. ERISA and the applicable provisions of the underlying contracts allow for such an award. *See* 29 U.S.C. § 1132(g)(2)(D) (reasonable attorney's fees and costs of the action); 18 U.S.C. § 185(a). (*See also* Dkt. No. 11-2, ¶¶ 20–23; Dkt. No. 11-3, ¶¶ 17–21; Dkt. No. 11-4, ¶¶ 26, 28–30; Dkt. No. 11-5, ¶¶ 36–39; Dkt. No. 11-6, ¶¶ 28–31). Plaintiffs request reimbursement for $20,694.50 in attorneys' and paralegal fees, $817.20 in costs and disbursements, and $13,920.00 in audit fees (Dkt. No. 11-1, ¶¶ 14, 17, 19).

"In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal brackets omitted)). A "reasonably hourly rate" is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Second Circuit has held that in calculating the presumptively reasonable fee, "courts should generally use the hourly rates employed in the district in which the reviewing

---

[7] The Court awards damages consistent with the affidavits of the administrators, trustees, and managers of the Funds. While Plaintiffs claim they are owed $68,880.00 in liquidated damages, (*see* Dkt. No. 11-9, ¶ 10), the correct value based on the affidavits appears to be $68,856.94. (*See* Dkt. No. 11-2, ¶ 13; Dkt. No. 11-3, ¶ 11; Dkt. No. 11-4, ¶ 18; Dkt. No. 11-5, ¶¶ 25–27; Dkt. No. 11-6, ¶ 20).

15

court sits." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted).

In support of their request, Plaintiffs submitted an affidavit from their attorney, Jennifer Clark of Blitman & King LLP, as well as detailed billing records. According to her affidavit, Ms. Clark is a partner at Blitman & King and an experienced attorney whose practice has included "numerous actions under ERISA to collect delinquent fringe benefit contributions." (Dkt. No. 11-1, ¶ 14, n.1). Ms. Clark also outlined the experience of two legal assistants who worked on this case. (*Id.*). The billing records document the dates worked and hours expended and describe the nature of the tasks completed. (*Id.* at 54–69). The records indicate Ms. Clark spent 44.5 hours working on behalf of Plaintiffs, and that her legal assistants spent 36.05 hours. (*Id.* at 69). Given the collections efforts and litigation required in connection with this case, the Court finds the hours worked reasonable.

Plaintiffs request reimbursement at the following rates: $323.00 per hour for work by counsel in 2020; $328.00 per hour for work by counsel in 2021; and $170.00 per hour for work done by legal assistants during both 2020 and 2021. (*Id.*). The relevant factors for the court to consider include: "the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case." *Ransom*, 2015 WL 145441 at *5, 2015 U.S. Dist. LEXIS 2965, at *14–15 (citing *Arbor Hill*, 522 F.3d at 184 n.2).

While Plaintiffs' requested hourly rates of $323 and $328 for counsel are reasonable, the rate of $170 for legal assistants is too high. "[C]ases in the Northern District have upheld hourly rates between $250 and $345 for partners, between $165 and $200 for senior associates, and

16

between $80 and $90 for paralegals." *Eng'rs Joint Welfare Fund v. C. Destro Dev. Co.*, 178 F. Supp. 3d 27, 35–36 (N.D.N.Y. 2016) (citing *Pope v. County of Albany*, No. 11–cv–0736, 2015 WL 5510944, at *9, 2015 U.S. Dist. LEXIS, at *26–27 (N.D.N.Y. Sept. 16, 2015) (collecting cases)). In a similar ERISA case, this Court awarded up to $306 per hour for work by counsel. Memorandum-Decision & Order at 20, *Upstate N.Y. Eng'rs Health Fund v. Solvay Iron Works, Inc.*, No. 15-cv-54 (N.D.N.Y. Mar. 28, 2017), ECF No. 134 (finding rates up to $306 were reasonable for 54.91 hours of work by same, experienced, counsel). Here, based on the similarity of the cases and hours worked, the Court finds that the requested rates for attorney's fees to be reasonable. The Court, however, reduces the legal assistants' rate to $95 to bring it within the range awarded by courts in the Northern District. *See Bricklayers & Allied Craftworkers Local 2 v. Mainstream Specialties Inc.*, No. 20-cv-463, 2020 WL 6781512, at *4, 2020 U.S. Dist. LEXIS 215527, at *9 (N.D.N.Y. Nov. 18, 2020) (awarding $95 per hour for paralegal work); *Bd. of Trs. of the Laborers Pension Fund v. Casale Constr. Servs.*, No. 18-cv-00583, 2018 WL 6047825, at * 4, 2018 U.S. Dist. LEXIS 196309, at *9–10 (N.D.N.Y. Nov. 19, 2018) (same); *Plumbers, Pipefitters, & Apprentices Local No. 112 Pension Fund v. D.J. Springer, Inc.*, No. 16-cv-0321, 2018 WL 3448684, at *4, 2018 U.S. Dist. LEXIS 118549, at *11–12 (N.D.N.Y. July 17, 2018) (same).

Accordingly, the Court awards $14,566.00 in attorneys' fees (6 hours at the rate of $323 per hour and 38.5 hours at the rate of $328 per hour) and $3,424.75 in legal assistants' fees (36.05 hours at the rate of $95 per hour). Plaintiffs also request permission to file a supplemental affidavit of attorneys' fees and costs incurred after May 27, 2021. (Dkt. No. 11). Plaintiffs' request is granted. Additionally, the Court has reviewed Plaintiffs' request for $817.20 in costs

and disbursements incurred between May 12, 2020 and May 27, 2021, and finds it reasonable. (Dkt. No. 11-1, ¶ 17).

Plaintiffs also seek $13,920.00 in audit fees. (Dkt. No. 11-10, at 17). "Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" *Teamsters Local Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (citation omitted). Thus, "a party requesting audit fees must provide sufficient information to allow a court to determine the reasonableness of the fees requested." *D.J. Springer*, 2018 WL 3448684, at *3, 2018 LEXIS 118549, at *9.

In support of their request, Plaintiffs submitted an affidavit from Timothy Dooley who is an employee of Joseph W. McCarthy & Associates, an independent auditing firm. (Dkt. No. 11-8). Mr. Dooley provided time sheets and statements for the audit conducted for the time period of January 1, 2017 to September 30, 2019. (Dkt. No. 11-8, at 27–43). The Court has reviewed these records and finds Plaintiffs' request for $13,920.00 reasonable.

### D.     Order to Compel Audit

Plaintiffs seek an order directing Defendant to "comply with its obligations under the Trusts and to produce all of its records for an audit covering the period October 1, 2019 to date," (Dkt. No. 11-10, at 20), and "to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys and paralegal fees and costs incurred in obtaining that audit." (Dkt. No. 1, at 24). The Trusts and Collections Policy obligate Defendant to submit to an audit of Defendant's payroll and related records. (*See, e.g.*, Dkt. No. 11-4, at 210 ("The Trustees may at any time examine and copy such books, records, papers, or reports of the Employer . . . as they deem necessary to permit them to determine whether the Employer is making full and proper reports and payments to the Funds."); *id.* at 22, 62, 151 ("Each Employer shall promptly furnish to the Trustees, on demand, the names of any and all of his employees… the hours worked by

each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund.")). Further, pursuant to the Collections Policy, in the event of an audit, "the Employer will be liable for all auditing fees, attorneys' and paralegal fees, court costs, disbursements and expenses incurred by the Funds in enforcing the Funds' right to audit." (Dkt. No. 11-4, at 210). Accordingly, Plaintiffs' request for an order directing an audit is granted.

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs are awarded: $231,743.56 in unpaid contributions and deductions; $73,574.86 in interest; $68,856.94 in liquidated damages; and it is further

**ORDERED** that Plaintiffs are awarded $17,990.75 in attorneys' and legal assistants' fees, $817.20 in costs, and $13,920.00 in audit fees; and it is further

**ORDERED** that Defendant is required to produce its books and records for Plaintiffs' review and audit for the period beginning October 1, 2019, and continuing to date; and it is further

**ORDERED** that the Court shall retain jurisdiction in this matter until Plaintiffs complete their audit of Defendant's books and records and apply for entry of judgment on contributions and deductions determined due as a result of the audit; and it is further

**ORDERED** that within thirty (30) days of the completion of the audit, and in no event later than 90 days after entry of this Memorandum–Decision and Order, Plaintiffs shall move for entry of judgment against Defendant for any contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest, liquidated damages, costs and fees of

19

the audit, and any attorneys' fees and costs Plaintiffs' have incurred since May 27, 2021; and it is further

**ORDERED** that the Clerk of the Court is directed to enter partial judgment in Plaintiffs' favor on the First and Second Causes of Action as to Defendant Pumpcrete Corporation together with interest thereon at the rate provided for by 28 U.S.C. § 1961(a).

**IT IS SO ORDERED.**

Dated: February 28, 2022
Syracuse, New York

Brenda K. Sannes
U.S. District Judge